# In the United States Court of Federal Claims

No. 18-1224C

(E-Filed: November 19, 2018)[1]

| | | |
|---|---|---|
| FACILITY SERVICES MANAGEMENT, INC., | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | Bid Protest; Temporary Restraining Order; Injunctive Relief; 28 U.S.C. § 1491(b)(2) (2012). |
| Defendant, | ) ) | |
| and | ) ) | |
| SHEARWATER MISSION SUPPORT, LLC, | ) ) ) ) | |
| Intervenor-defendant. | ) ) | |

John C. Dulske, San Antonio, TX, for plaintiff.

Isaac B. Rosenberg, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. LTC Andrew J. Smith, CPT Jeremy D. Burkhardt, Contract and Fiscal Law Division, United States Army Legal Services Agency, Fort Belvoir, VA, of counsel.

---

[1] This opinion was issued under seal on November 1, 2018. Pursuant to the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged. No redactions were proposed by the parties. Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

Robert K. Tompkins, Washington, DC, for intervenor-defendant. Rodney M. Perry, Leila George-Wheeler, Peter Scully, Vijaya S. Surampudi, Washington, DC, of counsel.

OPINION

CAMPBELL-SMITH, Judge.

On October 30, 2018, plaintiff filed its renewed second motion for a temporary restraining order, ECF No. 80. Also before the court are: (1) intervenor-defendant's response in opposition to plaintiff's motion, ECF No. 83; (2) defendant's response in opposition to plaintiff's motion, ECF No. 86 (corrected version of ECF No. 84); and (3) plaintiff's reply in support of its motion, ECF No. 89. Oral argument is scheduled to be held on November 2, 2018. For the following reasons, plaintiff's renewed motion for a temporary restraining order is **DENIED**; and, oral argument is hereby **CANCELLED**.

I. Background

This protest action was initially filed on August 15, 2018. See ECF No. 1. On October 30, 2018, plaintiff filed a second amended complaint. See ECF No. 79. The case involves considerable procedural and factual detail, but for purposes of deciding this emergency motion, the court will relate only those details that are necessary to the instant analysis.

Plaintiff has been providing installation support services at the United States Army Yuma Proving Ground (YPG) in Arizona for approximately six years. See id. at 3. The contract, pursuant to which plaintiff presently provides such services, is a bridge contract that was set to expire on September 13, 2018. See ECF No. 80 at 2. Due to the pendency of this protest action, defendant modified the bridge contract, extending its expiration date to December 13, 2018. See id.

On September 17, 2018, defendant awarded a new contract for the provision of installation services at YPG to intervenor-defendant. See ECF No. 79 at 3. The second amended complaint challenges that award, specifically taking issue with various aspects of the evaluation process conducted by defendant. See generally id.

On October 30, 2018, plaintiff filed a motion for a temporary restraining order and preliminary injunction. See ECF No. 80. In that motion, plaintiff states that defendant is wrongfully attempting to truncate the bridge contract and "accelerate phase-in" of intervenor-defendant's performance under the new contract, the award of which plaintiff challenges in the underlying bid protest action. Id. at 1. Plaintiff seeks an injunction preventing defendant and intervenor-defendant from moving forward with phasing in or performing under the new contract. See id. at 7.

2

II.     Legal Standards

In its second amended complaint, plaintiff invokes this court's bid protest jurisdiction.  See ECF No. 79 at 2.  This court's bid protest jurisdiction is based on the Tucker Act, which gives the court authority:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (2012).  The Tucker Act also states that the court may grant "any relief the court considers proper . . . including injunctive relief."  28 U.S.C. § 1491(b)(2) (2012).

Injunctive relief before trial is a "drastic and extraordinary remedy that is not to be routinely granted."  National Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1324 (Fed. Cir. 2004) (citation omitted).  As the United States Court of Appeals for the Federal Circuit has held:

> To determine if a permanent injunction is warranted, the court must consider whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief.

Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citing PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004)).  The decision of whether injunctive relief is warranted is within the court's discretion.  Dell Fed. Sys., L.P. v. United States, --- F.3d ---, Nos. 17-2516, 17-2535, & 17-2554, 2018 WL 4839542, at *5 (Fed. Cir. Oct. 5, 2018) (citing PGBA, 389 F.3d at 1223).

III.    Analysis

Plaintiff's motion for a temporary restraining order conflates two different contract issues.  The underlying bid protest in this case involves a challenge to the solicitation and evaluation process for the new contract for provision of installation support services at YPG, which was awarded to intervenor-defendant on September 17, 2018.  See ECF No.

79. The allegations supporting the injunctive relief plaintiff seeks now, however, relate to what it considers to be defendant's obligation under plaintiff's bridge contract to allow full performance through December 13, 2018.  See ECF No. 80 at 3-5.  The court will address plaintiff's request for emergency injunctive relief in relation to each contract, in turn.

      A.      New Contract Award to Intervenor-Defendant

In its motion, plaintiff analyzes the factors required to support emergency injunctive relief in terms of the new contract award to intervenor-defendant.  Plaintiff argues that:  (1) neither defendant nor intervenor-defendant will be harmed should the court issue an injunction; (2) it will prevail on the merits because defendant's evaluation process was unlawful; and (3) absent injunctive relief, it will suffer irreparable harm because defendant intends to move forward with performance under the new contract.  See ECF No. 80 at 5-6.

Assuming that plaintiff's present motion is properly characterized as related to the underlying bid protest, it is untimely.  On September 18, 2018, one day after defendant awarded the new contract to intervenor-defendant, the parties filed a joint status report.  That report stated, in relevant part, as follows:

> Since September 14, 2018, following the expiration of its previous bridge contract, FSI has been performing on a 3-month bridge contract that expires on December 13, 2018.  On September 17, 2018, the Department of the Army made its award to Shearwater in connection with Solicitation No. W9124R-15-R-0001.  Counsel for all parties met and conferred today.  Counsel for FSI stated that FSI is not seeking to restrain or enjoin the Army from moving forward with its award to Shearwater.[1]
>
> [1] Consequently, there is no need for a voluntary stay, and the Army intends to phase in Shearwater before the expiration of FSI's 3-month bridge contract.

ECF No. 57 at 1.

Six weeks ago plaintiff signed a joint status report that explicitly stated defendant's intention to phase-in intervenor-defendant's performance "<u>before the expiration of FSI's 3-month bridge contract</u>."  Id.  With that understanding, plaintiff also affirmatively stated that it did not seek "to restrain or enjoin the Army from moving forward with its award to Shearwater."  Id.  In its reply, plaintiff states that it did not have access to critical documents until the administrative record was filed on September 29, 2018.  See ECF No. 89 at 11 and n.1.  Even assuming the discovery of those documents

4

changed plaintiff's opinion of whether emergency relief was warranted, it waited more than three weeks to file the present motion.

In the court's view, defendant has done nothing more than execute on its expressly stated intentions, with regard to the new contract to intervenor-defendant. The court will not permit plaintiff to reverse its expressly stated intention at this late hour, after both the parties and the court have invested an inordinate amount of resources into resolving this matter within the frame previously agreed to by the parties.

Because plaintiff's motion for emergency relief is untimely to the extent that it relates to the underlying bid protest, the court will not analyze the likelihood that plaintiff will succeed on the merits of its case at this time. Rather, it will reserve that analysis for its consideration of the motions for judgment on the administrative record.

> B.  Full Performance of the Bridge Contract

Despite the fact that plaintiff facially presented its legal argument for injunctive relief in terms of preventing performance under the new contract awarded to intervenor-defendant, it appears that, in substance, plaintiff means to allege a breach of the bridge contract. According to the recitation of facts included in plaintiff's motion, the only developments since the parties submitted their September 18, 2018 joint status report relate to the termination of the bridge contract.

The relevant allegations deal almost entirely with transition activities, and read as follows:

> 9. On September 17, 2018, Defendant published a notice of award to [intervenor-defendant].

> 10. On October 17, 2018, the Army requested a proposal from FSI to shorten FSI's current bridge from December 13, 2018 . . . .

> 11. The next day, October 18, 2018, FSI submitted questions about the scope of the phase out . . . .

> 12. Later that day in follow up to FSI's questions, the Army and FSI discussed the scope of the phase out. During the discussion FSI was advised, among other things, the new contractor [intervenor-defendant] would be onsite to start phase in on November 13, 2018, FSI would be fully responsible for continuing full services through December 27, 2018, and [intervenor-defendant] would have no responsibilities for performance during that period. Id.

> . . .
>
> 14. On October 25, 2018, the Army provided FSI with another request for proposal . . . . This request sharply accelerates the phase out of the bridge contract to begin on November 1, 2018, and conclude on December 15, 2018. Id. The Army's rush to phase-in an otherwise unacceptable offeror is unreasonable on its face and evidences the Army's concerns over its improper evaluation of [intervenor-defendant] as detailed in FSI's MJAR filed three days earlier.
>
> 15. Here, the Army previously contracted with FSI for full performance through December 13, 2018, at which time FSI understood FAR §52.237-3 could be invoked by the Army to perform the 45 day phase out to run parallel with the Intervenor's phase in. Yet, despite having full contractual coverage through December 13, 2018, and knowing that FSI has previously submitted (at the Army's request) a proposal to remain in place through April 2019, the Army is intent upon moving forward with an unacceptable awardee.
>
> 16. The Army's actions from Thursday, October 25, 2018, are a transparent attempt to thwart the framework this case was proceeding under in order to get [intervenor-defendant] performing the improper contract before this Court can meaningfully issue a decision on FSI's MJAR to include a remedy if appropriate.

ECF No. 80 at 3-5.

The specific conduct that plaintiff takes issue with in these allegations is defendant's attempt to phase-in intervenor-defendant's performance prior to the time that plaintiff's bridge contract expires. A challenge to the administration of the bridge contract, however, is not within this court's bid protest jurisdiction, and therefore, cannot be appended to the existing case. Instead, plaintiff would need to bring any such challenge as a new suit, pursuant to the Contract Disputes Act and 28 U.S.C. § 1491(a). See Dalton v. Sherwood Van Lines, Inc., 50 F.3d 1014, 1018 (Fed. Cir. 1995) ("[w]hen the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution"); TigerSwan, Inc. v. United States, 110 Fed. Cl. 336, 348 (2013) (holding that plaintiff could not challenge contract management decisions as part of a bid protest, and collecting cases); Jones Automation, Inc. v. United States, 92 Fed. Cl. 368, 371 (2010) (denying a motion for temporary restraining order because the Court likely lacked jurisdiction over a putative bid protest "seek[ing] an order essentially compelling defendant to exercise a further option on the bridge contract, thereby extending the work under that contract"); Gov't Tech. Servs. LLC v. United States, 90 Fed. Cl. 522, 527 (2009) (holding that the government's failure to exercise an option was a matter of contract administration and thus was not covered by 28 U.S.C. § 1491(b)(1)).

Therefore, to the extent that plaintiff's request for emergency injunctive relief relates to issues of the administration of its bridge contract, the request must be denied as it is not properly part of the present case.

IV.     Conclusion

For the foregoing reasons, plaintiff's motion for a temporary restraining order, ECF No. 80, is **DENIED**.

As a result of the parties' considerable efforts to present complete and useful arguments in their briefs, the court was able to issue this decision ahead of oral argument that is currently scheduled for November 2, 2018.  While the court recognizes that significant resources may have been expended to arrange for the parties to be present tomorrow, on balance, the court considers it a wiser course to rule on this emergency motion as expeditiously as possible, and to save the parties the additional expense of appearing for oral argument when it is unnecessary.  As such, oral argument, previously scheduled for November 2, 2018 at 2:30 p.m., is **CANCELLED**.

On or before **November 21, 2018**, the parties shall **CONFER** and **FILE** a **Proposed Redacted Version** of this opinion, with any competition-sensitive or otherwise protectable information blacked out.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge